IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 2:22-cr-029 |
| | ) |
| MICHAEL DONIVAN WHITE, | ) By: Michael F. Urbanski |
| CHARLES RYAN BOWMAN, BRIAN | ) Chief United States District Judge |
| GREGORY CARROLL, JAMES | ) |
| BRIAN MULLINS, AND JAMES RAY | ) |
| WORLEY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter comes before the court on defendants James Worley, James Mullins, Brian Carroll and Charles Bowman's Motion to Sever their cases from that of defendant Michael White pursuant to Federal Rule of Criminal Procedure 14 and the Fifth Amendment to the United States Constitution, ECF Nos. 98, 102, 107, 140, and defendant White's Motion to Dismiss Count Seven of the Indictment, ECF No. 142. The government filed its Opposition to the Motion to Sever, ECF No. 99, and its Opposition to the Motion to Dismiss Count Seven, ECF No. 147. The court held a hearing on the Motion to Sever on May 2, 2023.

For the foregoing reasons, the Motion to Sever, ECF No. 98, is **GRANTED** and the Motion to Dismiss Count Seven, ECF No. 142, is **DENIED**.

### I. Background

The government charges that White led a methamphetamine trafficking conspiracy in Big Stone Gap, Virginia. Gov.'s Opp. Mot. Sever, ECF No. 99, at 2. Worley, Bowman, Mullins, and Carroll were allegedly involved lower levels of the conspiracy. Id. at 5. According to the Criminal Complaint, the government's evidence tends to show that the Worley, Bowman,

1

Mullins, and Carroll bought and sold controlled substances, including methamphetamine, to and from White and, at times, others allegedly involved in the conspiracy. Criminal Compl., ECF Nos. 3-4, at 44–49; 3-5, at 1, 31–37; 3-6, at 10–17, 25–28. The "epicenter" of the conspiracy was Orr Street in Big Stone Gap, specifically at the "red house" in which White resided, and the "white house" down the street. Criminal Compl., ECF No. 3-2, at 5.

In the early hours of the morning on November 13, 2021, White was in a car outside the "red house" with two women, Misty Ward and Lucille Vanover. Id. at 16. White had various narcotics in the vehicle and had planned to provide methamphetamine to Vanover before she left. Id.

At 4:09 a.m., while White, Ward, and Vanover were in the vehicle, Big Stone Gap Police Officer Michael Chandler responded to a call requesting a welfare check at the "red house." Id., at 3. Upon arrival, Officer Chandler approached the vehicle and "pecked" on the window. Id. at 16. White replaced Ward in the driver's seat and attempted to drive away, with Vanover in the back seat. However, the car soon struck another vehicle and became stuck in the mud. When Officer Chandler approached the driver's side window, White opened fire. Id. Officer Chandler reported to dispatch "shots fired; I've been hit," Id. at 10, before falling face-down into a ditch, id. at 17. White left the scene, ultimately fleeing into Tennessee where he was arrested. Id. at 4. The interval between Officer Chandler's arrival on the scene and distress call was approximately three minutes. Id. at 10. Investigators recovered eight spent shell casings from the scene, id., and an autopsy concluded that Chandler was struck twice, once in the abdomen and once in his right wrist/forearm. Id. at 12.

The government claims that White murdered Officer Chandler to avoid new drug-related charges, Gov.'s Opp. Mot. Sever, ECF No. 99, at 4, and that Worley, Bowman, Mullins, and Carroll were all allegedly involved in the methamphetamine trafficking conspiracy at the time and aware of White's potential for violence in furtherance thereof. See id.; Crim. Compl., ECF No. 3-2, at 24, 47. Worley, Bowman, Mullins, and Carroll contend that Officer Chandler's murder was related just to White's desire to avoid returning to prison and therefore unrelated to any conspiracy. Mot. Sever, ECF No. 98, at 3.

Defendants White, Worley, Bowman, and Mullins were initially charged in a nineteen-count indictment. ECF No. 25. On April 11, 2023, after the motions at issue in this hearing were filed, the government filed a superseding twelve-count indictment, which eliminated charges for individuals who have pled guilty and added Carroll. ECF No. 110.

Count One of the superseding indictment charges all defendants with conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841. This is the only charge against Carroll.

White (Count Four), Worley (Count Ten), Mullins (Count Twelve), and Bowman (Count Eleven) are each charged with one count of knowingly and intentionally using a communication facility in committing and in causing and facilitating the commission of any act or acts constituting a felony controlled substance offense. Id.

The remaining counts relate solely to White and charge him with the following: possessing with the intent to distribute five grams or more of methamphetamine (Count Two); knowingly using a place—specifically, the two homes on Orr Street—for the purpose of distributing and using a controlled substance (Count Three); knowingly possessing a firearm

3

and ammunition as a felon and unlawful user of controlled substances (Count Five); knowingly possessing a stolen firearm (Count Six); using, carrying, brandishing, and discharging a firearm during and relation to, and possessing a firearm in furtherance of, a drug trafficking crime as set forth in Counts One and Two (Count Seven); causing the death of a person with a firearm in the course of a drug trafficking crime (Count Eight); and murdering Officer Chandler (Count Nine).

## II. Motion to Sever

Worley, Bowman, Mullins, and Carroll argue that their cases should be severed from White's because of the significant risk that a joint trial would "compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Mot. Sever, ECF No. 98, at 3 (quoting United States v. Zafiro, 506 U.S. 534, 539 (1993)).[1]

Multiple defendants may be "charged in the same indictment if they are alleged to have 'participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.'" United States v. Cooper, 624 F. App'x 819, 822 (4th Cir. 2015) (quoting Fed. R. Crim. P. 8(b)). Moreover, joint trials of defendants who are indicted together is preferred in the federal system because it promotes judicial efficiency, id., and

---

[1] At a hearing on May 2, 2023, counsel for Bowman proposed severing the case by count instead of by defendant, separating the conspiracy and drug-related charges from White's remaining charges related to the firearm and murder of Officer Chandler. White objected to this suggestion, noting that the drug conspiracy charged in Count One is a predicate to the offenses charged in both Counts Seven and Eight. ECF No. 143. Trying these Counts separately would force White to mount a piecemeal defense: if convicted of the conspiracy, the jury in the second trial would be required to decide whether the murder was connected to the conspiracy, without the benefit of hearing the evidence about the conspiracy itself. Id. Severing by count would also pose logistical hurdles, as Rule 29 motions and concerns about finality may delay the start of the second trial. Id. Because these objections are well-taken, the court analyzes only the original proposal, to which White does not object: to sever White's case from that of his co-defendants.

avoids the "inequity of inconsistent verdicts." Richardson v. Marsh, 481 U.S. 200, 210 (1987); Zafiro, 506 U.S. at 537. The presumption of a single trial for defendants indicted together is "especially strong" in conspiracy cases. United States v. Chorman, 910 F.2d 102, 114 (4th Cir. 1990); see also United States v. Dinkins, 691 F.3d 358, 368 (4th Cir. 2012); United States v. Tedder, 801 F.2d 1437, 1450 (4th Cir. 1986).

However, Rule 14 of the Federal Rules of Criminal Procedure allows a district court to grant severance if "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14. In Zafiro, the Supreme Court explained that the "risk of prejudice is heightened" when "many defendants are tried together in a complex case and they have markedly different degrees of culpability." 506 U.S. at 539 (citing Kotteakos v. United States, 328 U.S. 750, 774–75 (1946)). Severance is warranted "'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" United States v. Oloyede, 933 F.3d 302, 312 (4th Cir. 2019) (quoting Zafiro, 506 U.S. at 539). The defendant bears the burden of showing that "actual prejudice would result from a joint trial, . . . and not merely that a separate trial would offer a better chance of acquittal.'" Id. (quoting United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995)).

Here, the defendants seeking severance from White—Worley, Bowman, Mullins, and Carroll—possess a markedly different degree of culpability than White. While the group is linked through a loosely-organized drug conspiracy, White is accused of murdering a law enforcement officer. Mot. to Sever, ECF No. 98.

> At a joint trial, where one defendant is charged with offenses in
> which the other defendants did not participate, the detailed

>  evidence introduced to establish guilt of the separate offenses may shift the focus of the trial to the crimes of the single defendant. In such cases, codefendants run a high risk of being found guilty merely by association.

United States v. Satterfield, 548 F.2d 1341, 1346 (9th Cir. 1977); United States v. Michel, 588 F.2d 986, 1002-03 (5th Cir. 1979) ("Where, as here, the government charges several defendants with conspiracy and numerous substantive counts, the possibility always exists that the jury might cumulate the evidence introduced against all to find guilty a defendant whose connection was only marginal.").

Like this case, United States v. Haworth, 168 F.R.D. 658, 659 (D.N.M. 2017), involved defendants connected through a drug conspiracy charge. The low-level defendants faced relatively few charges—linked to racketeering, a marijuana conspiracy, or possession of marijuana with intent to distribute—while the bulk of the charges were against two high-level defendants, for more serious crimes, including murder. Id. The court distinguished the drug crimes from the violent crimes, granting severance because it was "questionable whether a jury would be able realistically to compartmentalize the disparate evidence with respect to each defendant." Id.

In United States v. Coles, No. 1:16-CR-212, 2021 WL 308831, at *19–20 (M.D. Pa. Jan. 29, 2021), the court severed the cases of a group of defendants accused of attempted murder from those charged with triple homicide and robbery. The court acknowledged that it could not "say with certainty that any defendant has identified a 'specific trial right' that would likely be compromised by joint trial," but found it "likely that at least some of the rights contemplated by Zafiro [would] be implicated and potentially compromised." Id. (emphasis in original). Further, given the "anticipated length of trial," the court had "significant

6

misgivings about a lay jury's ability to manage the avalanche of limiting instructions that a joint trial of this nature would entail," as well as "the substantial risk of prejudice that would almost inevitably result." Id.; see also United States v. Furness, No. 3:19-CR-098 (4), 2021 WL 736900, at *2 (S.D. Ohio Feb. 25, 2021) (granting severance in a conspiracy case where a co-defendant was charged with a greater number of offenses, in which the defendant seeking severance was not involved, due to a danger that "despite any cautionary instructions," the "jury could vote to convict . . . based on a theory of 'guilt by association'").

The jury will decide whether there was a conspiracy and whether White murdered Officer Chandler in furtherance of that conspiracy. However, this case bears some resemblance to Kotteakos. 328 U.S. at 752–55. Kotteakos involved a many-defendant conspiracy in which distinct sets of defendants independently worked with a central broker to secure fraudulent loans under the National Housing Act. 328 U.S. at 752–55. Instead of a tightly organized conspiracy with many links between co-defendants, "the pattern" in Kotteakos "was that of separate spokes meeting at a common center." Id. at 755 (internal quotations omitted). Here, the criminal complaint describes a conspiracy centered on White, in which each co-defendant bought or sold White drugs at various times. Like in Kotteakos, the government's evidence at trial may not support a finding of an overarching conspiracy between all defendants, but rather individual conspiracies between White and subsets of his co-defendants. If that is true, and "the only nexus among [the conspiracies] lies in the fact that one man participated in all," id. at 773, it would be intolerably prejudicial to try a defendant accused of participating in a few drug transactions with a co-defendant charged with murdering a police officer.

7

The court finds that a joint trial poses significant risks of prejudice. A limiting instruction may have reduced efficacy in this is a multi-week, multi-defendant case in which the jury will hear a significant amount of evidence about both the conspiracy and Officer Chandler's death. While the crimes with which the defendants seeking severance are charged are serious, there is a vast difference between their charges and White's. Only White stands accused of firing multiple shots at a police officer, shortly after their encounter began, ultimately fleeing while the officer lay face-down in a ditch. In a joint trial, the risk of spillover prejudice as to Worley, Bowman, Mullins, and Carroll is too great. Therefore, the Motion to Sever is **GRANTED**.

### III.  Motion to Dismiss Count Seven

White argues that Count Seven of the indictment should be dismissed because Counts Seven and Eight are multiplicious and therefore violate the Double Jeopardy Clause of the Fifth Amendment. Mot. Dismiss Count Seven, ECF No. 142, at 1–2. In Count Seven, the government charges that White knowingly used, carried, brandished, and discharged a firearm during and in relation to, and possessed a firearm in furtherance of, a drug trafficking crime for which he may be prosecuted—specifically the conspiracy to distribute methamphetamine as charged in Count One—in violation of 18 U.S.C. § 924(c)(1)(A). Superseding Indictment, ECF No. 110, at 4. In Count Eight, the government charges that White, in the course of violating 18 U.S.C. § 924(c)—as charged in Count Seven—caused the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1).

The Double Jeopardy Clause provides that "no person shall . . . be subject for the same offence to be twice put in jeopardy of life and limb." U.S. Cons. amend. V. The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal;

8

(2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. Brown v. Ohio, 432 U.S. 161, 165 (1977) (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)).

Only the third category is relevant here. Count Seven's § 924(c) charge is a lesser-included offense of Count Eight's § 924(j) charge. Therefore, "the Double Jeopardy Clause prohibits imposition of cumulative punishments for § 924(c) and § 924(j) convictions based on the same conduct." United States v. Palacios, 982 F.3d 920, 925 (4th Cir. 2020).

White contends that Count Seven must be dismissed. "Because [he] cannot receive separate punishments for convictions under the two statutes," § 924(c) and § 924(j), White argues that he "cannot be required to stand trial on and receive separate convictions" for these charges. Mot. Dismiss Count Seven, ECF No. 142, at 3. White is correct that separate convictions on these charges could not stand. However,

> Under our judicial system, prosecutors are permitted to carve up criminal conduct into multiple counts, even if some of the counts are lesser included offenses or constitutionally identical offenses. There are two reasons for allowing the trial of an individual on repetitive counts. First, if it is uncertain that the jury will convict a defendant on a major count, the prosecutor is allowed to obtain, in the alternative, a sure-fire conviction on a lesser included offense. Second, this allowance helps to prevent minor problems of proof on one count from allowing a genuinely guilty person to escape liability for his criminal conduct. The Double Jeopardy Clause does not force the prosecutor to gamble on obtaining the major conviction. Instead, the defendant can be indicted on both counts, and, if convicted on both, the Double Jeopardy Clause operates to require that the sentences on the two counts run concurrently. The better practice in that instance would be for the trial judge to strike the conviction on the lesser included offense . . . . See Ball v. United States, 470 U.S. 856, 865–66, 105 S.Ct. 1668, 1674, 84 L.Ed.2d 740 (1985).

9

United States v. Luskin, 926 F.2d 372, 378 (4th Cir. 1991) (emphasis added). This "better practice," id., has been followed in "a long line of authorities directing vacation of the conviction that carries the more lenient penalty when a defendant is convicted of both a greater and a lesser-included offense." United States v. Brown, 701 F.3d 120, 128 (4th Cir. 2012); see, e.g., Palacios, 982 F.3d at 923 (4th Cir. 2020) (approving of the district court's denial of a pre-trial motion to dismiss multiplicious counts, as "correctly explaining that the Double Jeopardy Clause did not 'require the Government to elect [between the § 924(c) and § 924(j) offenses] at this juncture'"); United States v. Snyder, 766 F.2d 167, 171 (4th Cir. 1985) (holding that, when a defendant is convicted of a greater and lesser-included offense, "the proper remedy is to vacate both the conviction and the sentence on the included offense, leaving the conviction and the sentence on the greater offense intact") (cleaned up).

Proceeding to trial on both Counts Seven and Eight does not violate Double Jeopardy. Should White be convicted on both Counts, the court retains the ability to vacate the conviction on Count Seven, thereby providing an adequate post-trial remedy. Therefore, the Motion to Dismiss Count Seven, ECF No. 142, is **DENIED**.

### IV. Conclusion

For the aforementioned reasons, the Motion to Sever, ECF No. 98, is **GRANTED** and the Motion to Dismiss Count Seven, ECF No. 142, is **DENIED**.

It is **SO ORDERED**.

Entered: June 8, 2023

Digitally signed by Michael F. Urbanski
Chief U.S. District Judge
Date: 2023.06.08 16:47:09 -04'00'

Michael F. Urbanski
Chief United States District Judge