IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 2:22-cr-029-7 |
| | ) |
| BRIAN GREGORY CARROLL, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the court on several pretrial motions filed by defendant Brian Gregory Carroll and the United States. The court held a hearing on these motions on April 5, 2024. Carroll, through prior counsel, filed a Motion to Suppress statements he made during two interviews with officers of the Wise County Sheriff's Office. ECF No. 257. Carroll also wrote a letter to the court asking the court not to accept his plea of guilty after he entered the plea before the magistrate judge. ECF No. 308. Carroll's Motion to Suppress, ECF No. 257, is **DENIED** because there is no evidence that he gave the statements in question involuntarily nor that law enforcement coerced him into making the statements. As to his plea of guilty, the court **GRANTS** Carroll's request that the court not accept his plea and accordingly **DECLINES** to adopt the Report and Recommendation.

The government has filed two motions. First, the government seeks to suppress any evidence not disclosed by Carroll to the government in advance of trial. ECF No. 253. Second, the government requests that the court bifurcate the guilt and penalty phases of Carroll's trial, which Carroll does not oppose. ECF No. 312. Both of the government's motions are **GRANTED**.

1

## I. Carroll's Motion to Suppress

On April 11, 2023, the Grand Jury returned a twelve-count Superseding Indictment that charged five defendants as part of a methamphetamine trafficking conspiracy in Big Stone Gap, Virginia.[1] ECF No. 110. Carroll is charged only in Count One, which alleges that he conspired with at least 19 other individuals to distribute and possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Id. at 1–2.

Carroll, through Hudson, filed a motion to suppress statements made during two interviews, each of which lasted approximately one hour, with Wise County Sherriff's deputies, on January 28, 2022, and October 25, 2022. The government provided the court with audio recordings of both interviews and a video recording of the January 28 interview. The court has reviewed each of these recordings. Carroll argues that his statements were obtained in violation of the Fifth Amendment because he was so intoxicated that he made them involuntarily.

### A. Factual Background

In the January 28, 2022, interview, Carroll described his relationships with Michael White and several others involved in the alleged conspiracy, including James Brian Mullins. He told the officers that he hoped the officers could assist him with a pending probation violation he faced in state court in exchange for the information he shared. The video recording reveals that Carroll was handcuffed throughout the interview and that law

---

[1] Although this case originally involved seven defendants, the Superseding Indictment only charges five individuals: Carroll, Michael White, Charles Ryan Bowman, James Brian Mullins, and James Ray Worley. See ECF No. 110. Bowman, Mullins, and Worley have pled guilty. Only Carroll and White, who is charged with the murder of Michael Chandler, intend to go to trial.

2

enforcement officers with the Wise County Sheriff's Office gave Carroll a Miranda warning.[2] Carroll then signed a form acknowledging that he was advised of his rights. Carroll recounted several interactions he had with White in which Carroll purchased and sold drugs. The officers asked questions in response to Carroll's statements, and Carroll answered without protest. They also asked Carroll about the murder of Michael Chandler and an armed robbery that had recently occurred, but Carroll did not provide information on those subjects. Toward the end of the interview, Carroll offers to collect and share more information with the officers in exchange for favorable treatment on the probation violation.

Carroll was arrested on a Complaint in this case on October 25, 2022, and interviewed the same day for approximately one hour. Law enforcement officers began the interview by informing Carroll that he may be able to help himself lessen the potential penalty he faced if he answered their questions. The officers gave Carroll a Miranda warning, and he signed a waiver of his Miranda rights. Carroll stated that he began using meth at age ten. During the interview, one of the officers observed that Carroll appeared to be withdrawing from methamphetamine. Carroll confirmed that he was experiencing withdrawal but continued to answer questions about drug weight, the individuals with whom he dealt drugs, and the presence of firearms at the drug deals. After answering the officers' questions, Carroll asked whether he would receive favorable treatment for the information he had provided and if he could provide additional information to help himself. The officers told him that his criminal

---

[2] Carroll received two Miranda warnings during this interview—first when the interview began and again when Task Force Officer Larry Mullins with the Bureau of Alcohol, Tobacco, Firearms, and Explosives began questioning Carroll about his involvement with drugs.

history and the drug weight involved in the conspiracy would impact his sentence and asked him to continue to cooperate throughout the proceeding.

## B. Legal Standard

The Fifth Amendment to the Constitution guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against compulsory self-incrimination is safeguarded by procedural rules dictating the terms of custodial interrogations. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). These rules require law enforcement officers to warn a suspect of his rights and obtain a waiver of those rights before conducting custodial interrogation, with limited exceptions. See United States v. Mashburn, 406 F.3d 303, 306 (4th Cir. 2005).

A suspect is "in custody" for Miranda purposes if "there [was] a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." Stansbury v. California, 511 U.S. 318, 322 (1994). The term "interrogation" includes not only "express questioning," but also "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). In deciding whether statements constitute "interrogation," courts focus on the perceptions of the suspect, rather than the intent of the police. Id. The government bears the burden of "demonstrating the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 384 U.S. at 444.

After a suspect has been "adequately and effectively apprised of his rights," he may then choose to waive them. Id. at 467. A defendant's waiver of these Miranda rights is only effective if made "voluntarily, knowingly, and intelligently." Id. at 444. Courts must review the

4

"totality of the circumstances" to determine whether a waiver is valid. Moran v. Burbine, 475 U.S. 412, 421 (1986). A waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." Id.

### C. Discussion

Carroll argues that his Miranda waivers in both interviews were invalid because he was so intoxicated that he did not knowingly and intelligently relinquish his rights of his own free will. However, the recordings of the interviews demonstrate that Carroll coherently provided detailed information about his drug dealing history, including drug weight, the identities of other involved individuals, and the presence of firearms at drug deals. Indeed, Carroll identified specific characteristics of the firearms involved, including the caliber, make, and color of the guns.

As to the January 28, 2022, interview, the court finds that Carroll knowingly and intentionally waived his Miranda rights and voluntarily provided statements to law enforcement about his knowledge of drugs and firearms in his community. The video recording of the interview shows that the officers read Carroll the Miranda warning and he signed a form acknowledging that he was advised of his rights. At several points throughout the interview, Carroll asked officers whether they could help him with his pending probation violation in exchange for the information he provided. At the conclusion of the interview, Carroll emphasized his willingness to provide any information that could reduce his criminal exposure. Plainly, Carroll "voluntarily, knowingly, and intelligently" waived his Miranda rights. 384 U.S. at 444. Further, there is no evidence that the officers obtained Carroll's statements through coercion. The video recording displays Carroll sitting at a conference table,

5

handcuffed, with three officers sitting in the room with him, none of whom verbally or physically threatened Carroll. The court concludes that Carroll willingly participated in this interview.

The same is true for the October 25, 2022, interview. Carroll had been arrested earlier the same day on a Complaint in this case. Officers conducting the interview read Carroll a Miranda warning and then obtained a signed Miranda waiver from him. Though one officer observed, and Carroll confirmed, that he was withdrawing from methamphetamine at the time of the interview, Carroll continued to share detailed information about his drug dealing history. Further, Carroll's request for help during the interview supports the voluntary nature of his statements—after he shared specific details about drug weight, involved individuals, and firearms, he asked the officers whether his information could help him with the conspiracy charge he faced in this case. Moreover, there is no evidence of coercion during this interview. While the court received no video recording of this interview, the audio recording indicates that Carroll never objected to any of the officers' questions and provided specific information in response. The court finds that Carroll knowingly waived his Miranda rights and voluntarily provided information without coercion.

In sum, Carroll voluntarily, knowingly, and willingly made statements to law enforcement during the January 28, 2022, and October 25, 2022, interviews. Accordingly, Carroll's motion to suppress statements made at these interviews is **DENIED**.

## II. Carroll's Guilty Plea

Carroll appeared before United States Magistrate Judge Pamela Meade Sargent on December 7, 2023, to enter a plea of guilty to the conspiracy charge. Judge Sargent filed a

report and recommendation on December 8, 2023, advising the court to accept Carroll's plea. ECF No. 291. On January 2, 2024, the court received a handwritten letter from Carroll asking the court not to accept his plea of guilty because he wished to proceed to trial. ECF No. 308. At the April 5, 2024, hearing, Carroll confirmed that he wanted the court to decline to accept his guilty plea and that he wished to proceed to trial. Accordingly, Carroll's request is **GRANTED**, and the court **DECLINES** to adopt the report and recommendation. Trial in Carroll's case is set for June 10–12, 2024, in Abingdon, Virginia.

### III.     Government's Motion to Suppress Evidence Not Disclosed

The government filed a motion asking the court to suppress any evidence that the defendant must produce to the government, but does not, prior to trial. At the April 5, 2024, hearing, Carroll, through counsel, indicated that Carroll did not have discoverable information at the time but would be sure to disclose any discoverable information he receives well in advance of trial. The government's motion is **GRANTED**, and Carroll must disclose any discoverable information by the pretrial deadline agreed upon by the parties and set forth in the operative scheduling order. See Second Am. Scheduling Order, ECF No. 375.

### IV. Government's Motion to Bifurcate

The government seeks to bifurcate the guilt and penalty phases of Carroll's trial. ECF No. 312. If convicted on Count One of the Superseding Indictment, Carroll faces an enhanced mandatory minimum penalty if he has a prior conviction for a serious drug felony. Carroll does not oppose this motion. Accordingly, the government's motion is **GRANTED**.

## V. Conclusion

For the reasons stated above, Carroll's Motion to Suppress, ECF No. 257, is **DENIED**. Further, the court **GRANTS** Carroll's request for the court not to accept his plea of guilty, ECF No. 308, and the court accordingly **DECLINES** to adopt the Report and Recommendation on Carroll's guilty plea, ECF No. 291. Finally, the government's Motion to Suppress Evidence, ECF No. 253, and Motion to Bifurcate, ECF No. 312, are **GRANTED**.

An appropriate Order will be entered this day.

Entered: April 11, 2024

Michael F. Urbanski
Chief United States District Judge